Go ahead. Thank you, Your Honor. May it please the Court, my name is David Leinbach. I represent the plaintiffs and appellants Myra Casas and Julio Fernandez. This appeal asks whether California's reporting time law applies to a scheduling policy that requires employees to report for work by telephone instead of physically appearing at a brick-and-mortar location. Now, in addressing this issue, there are two points I would think merit additional discussion, as it was the largest dispute between the parties. The plain meaning of the regulation and the legislative purpose of the regulation. So to begin with plain meaning as we must, it's important to keep in mind that California's labor laws are to be broadly construed in favor of protecting employees and in a manner that facilitates their protective intent. Now, beginning with the key phrase to the reporting regulation, report for work. If we look just at the word report, as our briefing discussed, there are several prominent dictionary definitions that define the word report in a manner that allows for alternative meanings. One suggesting physical attendance and one not suggesting physical when the employee is required to answer the phone, to be available to answer the phone at home or wherever they might be with their cell phone, that that's, they're at work or they're reporting for work or what? Well, they're not answering their phone. So employees, Victoria's Secret employees are subject to scheduling policy. You have a more traditional scheduling policy, you're set to work say from noon to four, you physically show up, you work your shift. Then they have call in shifts. We'll say it's from 12 to four again. So instead of physically showing up at 12, the employee has to call the employer within two hours of the scheduled shift and tell them, I'm ready to work the scheduled shifts. Any time within that two hour period or at the two hour mark? The way it's actually phrased in the complaint, it says at least two hours, but the record shows during oral argument that we'd explained that was a typo. What we meant to say was no more than two hours. So there is some discrepancy there. As I understand the policy, it's no more than two hours. But again, there is a discrepancy with the pleading on that that was brought out in the oral argument transcripts. So the idea is, these call in shifts- So you have to call within two hours? Yes, Your Honor. Now, the idea with these variations in our complaints, and since this comes from a Rule 12 motion, they're to be accepted as true. The call in policy is mandatory. Employees are instructed to treat these call in shifts as actual scheduled work time. They can be disciplined for not complying with the call in scheduling policy, just the same as they can be disciplined for not complying with any regular scheduling policy. So these employees, just like a normal shift, are required to make this scheduled work time available to their employer. The call in policy, as a practical matter, it's really a distinction without a difference in terms of the effect on employees. You can't schedule work with another employer during the time that you're scheduled for a call in shift. You'll have to incur costs just at the time to report for a call in shift. For example, child care costs or elder care costs. It's not as though someone can arrange for a babysitter on under two hours notice, or even care for a sick or elderly person they're responsible for. So the idea with these shifts are we're almost addressing an issue of form over substance. There's really no practical distinction between these policies in terms of the mandatory availability, the effect on employees. The only distinction is that you're substituting a requirement that employees report for work by walking through an entrance and have them call their employer. Now, as it applies to California's reporting time law, this call in policy fits within the plain meaning of the phrase when an employee is required to report for work. There's no dispute that they're required based on the allegations and the complaints. The word report is defined by ordinary dictionaries, does not require a definition of physical movement. For example, Oxford Dictionary defines it as to present oneself as having arrived at a particular place or as ready to do something. Macmillan's Dictionary defines it as to tell someone you are present or ready to start working. But if we get beyond just the definition of the word report, isolated and completely divorced from its statutory context, which is largely what the district court did here, we can look beyond that and look at the phrase the word work and how California treats that Under California law, under Merillian, employees are deemed to be working whenever they're operating under the employer's control. Now, again, there's no dispute based on the allegations of the complaint that when employees comply with the call in policy, they are operating under the employer's Victoria's Secrets control. We can look at the phrase as a whole as we explained in our brief. The phrase report for work and the phrase's critical pivot around the preposition for, which demonstrates an action of purpose and of intent, not movement. And the IWC, they could have chosen to make this reporting requirement crystal clear that it pivots around a physical attendance, that physical attendance is the linchpin of the analysis. They could have said report to work because to suggests movement of a person or a thing from one place to another. They could have made it even clearer and said report to the workplace, but they didn't. They said report for work. Now, also within the plain meaning analysis and getting aside just from the phrase report for work, California law requires that we construe the statute as a whole. If we look at reporting time's remedy, the remedy provided by reporting time law is half of the usual or scheduled day's shift. So this is not a flat remedy. This is a variable remedy that directly corresponds to the amount of time the employee made available to the employer. When they call in, they're talking to their supervisor. Yes, Your Honor. Yes, Your Honor. So when they call in and they effectively say, hey, I'm calling in for my call-in shift. I'm ready to work. And then the employer either, you know, they'll put them on hold or they'll ask them to call back or they'll just say yes or they'll say no, but they're reporting for work. They're expressing their willingness, availability, and intent to work a scheduled mandatory work shift. So let me ask you this. In the briefs, sort of at the end of the briefs, you suggest that at a minimum, we should certify this issue to the California Supreme Court. We did, Your Honor. Why shouldn't we do that? Why shouldn't you do that? Yeah, I mean, why, you know, it seems like this, the California Supreme Court lately has been taking up a number of these issues under the wage and hour law and other employment related statutes. It seems like this is well suited for them. That is why we put that in our brief, Your Honor. We understand that there are two competing considerations. One, this court is supposed to look to the California Supreme Court and appellate court decisions and try and predict how the California Supreme Court will rule. And at the same time, if it does involve issues of important public policy that have never been specifically addressed by the courts, the court has a discretion to certify it to the California Supreme Court. We believe that it did meet that criteria. We felt obligated to point that out to the court, but we are here ready to argue this before this panel as well. Now, what's... Well, I mean, if the California Supreme Court doesn't, wouldn't want to take up the issue, you know, we would have to decide that we'd have to give it our best shot about what the California Supreme Court might do. That's correct, Your Honor. Now, what... They have, they've had a couple of interesting, in fact, they still have, they had an argument in one not too long, an interesting case involving security guards. Yes, the Mendiola case. Yeah, it was an on-call case. Yes. Now... Not identical here, but... No, it's, it's different. Yeah, but it's different. Now, and then that actually raises an interesting point that I would like to address. In Victoria Secret's answering brief, it's an argument effectively that we're pursuing the wrong claim, that we shouldn't be pursuing reporting time, we should be pursuing on-call time. I just don't see it. The parallels between the circumstances when you're on-call and when you're reporting for work, they just don't match. But one of the arguments that they had offered was that it's incredible if we could have just placed these employees on-call instead of having them report for work, we could have just placed them on-call the whole time. I strongly disagree with that. I think California's on-call law would absolutely require, if they had this hypothetical policy where instead of calling in before the shift, they just made them available for six or eight hours a day, I think California law absolutely would say you're required to pay standby pay. And one of the, actually the main reasons for that is highlighted in Victoria Secret brief. One of the factors they cited was whether or not there's a historical use of on-call time in a particular industry. Now, of course, there's no use of on-call time in the retail industry. And that's because California law doesn't allow on-call time to apply to industries that don't need it as a business necessity. And in fact, the Department of Labor Standards Enforcement opinion letter that was cited in Victoria Secret brief specifically provides that there has to be a reasonable and long-standing industry practice which clearly indicates that workers in the affected classifications are expected to be on-call and that depriving the employer of the right to require uncompensated on-call status of the workers in this category will have a serious negative impact on the employer's business. That cannot possibly be said for an employer, for your average everyday retailer. They've been not using on-call policies since there were retailers. There is no historical precedent and there is no necessity. If that was the case, then every employer would do it. But that's not how on-call law works. It's not a right. It's a privilege based on business necessity. And that's why, like the Mendiola case, all the on-call cases that we see, they involve the same classes of employees. Firemen, nurses, paramedics, security guards, police officers. There's a reason. There's a necessity for some people to be on-call. Among those classes of necessities are not retail employees. So, when they're on this status where they're required to call in two hours ahead of time, what do they get paid? What's their pay? If they call, when they call in? No, no, no. How much, if they get there and they work an hour, how much do they get paid? Oh, well, we haven't been able to conduct any discovery in this case yet. This case is still at the pleading stage. Well, you know what your client made, I would think. I believe my client makes, you know, eight, nine, ten bucks an hour, somewhere in there. Maybe like a little couple ticks above the minimum wage. I don't know. She probably gets commissions, too. I don't think she does. I could be wrong on that. So, you don't know what your client gets paid? Her hour. She doesn't work there anymore. And I don't recall off the top of my head what she was paid. No. I apologize. Does she get vacation time? As I understand it, no. Does she get medical care? No. Does she get a cup of coffee once in a while? You know what? Just for the sake of argument, I'm going to give that to them. They have coffee Thursdays. I'm going to save your time for rebuttal. Yes, Your Honor. I meant to say that earlier. Thank you. Good afternoon, Your Honors. I am Beth Gunn, and I represent Victoria's Secret Stores, LLC. Appellant, in this matter. And I'd like to start by addressing something very important in this case, which is that this is an interlocutory appeal that is appealing a ruling on a motion to dismiss, and it is really focused on the allegations that were presented in the first amended complaint. A lot of what we just heard from Appellant's counsel really strays very far from the issue as they were framed in the first amended complaint, and the issues that were decided by the district court judge, as well as the issues that were certified for appeal pursuant to... Why don't you tell us how this works? Do you want to hear how it works, or how the first amended complaint alleges that it works?  Predominantly, it is a scheduling practice where employees are scheduled both for regular shifts, and then some of their shifts are shifts that they may or may not be called in to work. And they know ahead of time that these shifts are things that they might not be called in for. So, in practice, they're supposed to call in at least two hours before the shift, which is what the first amended complaint alleges. And sometimes they call in more than two hours before the shift. Sometimes they're told the night before, or the day before, or a week before that they won't be needed to come in. So there are lots of different ways, but as alleged in the first amended complaint, the allegations... How does Victoria decide whether to have them come in or not? It is usually based on what the traffic needs of the store are, that day. But there could be other reasons, too. A person could call in... The traffic needs of the store. That's the predominant reason. I mean, an employee could call in and say, I'm not really feeling up to it today, can you call in somebody else instead? And they could probably do that. So, these are part-time employees, typically, for these call-in shifts. In reality, although this isn't in the first amended complaint, what happens is that employees fill out a form when they start working there that says when they're available. And they get scheduled during the times that they tell Victoria's Secret they're available. So insofar as the policy consideration is concerned as to whether or not this infringes on the employee's time, they're only scheduled for call-in shifts on times when they've told Victoria's Secret that they could be available. Victoria did? Victoria's Secret, yes. They're responsible for the scheduling practices. They decided they wanted to employ this call-in system. I believe so. I mean, honestly, that wasn't alleged in the first amended complaint. It wasn't at issue, and I'm not sure I have all the facts on that. But I believe it's something that emanated from the employer. So what's the purpose of setting up this call-in system? I think there's a benefit to both sides. Employees, the reporting time statute makes it very clear, I think, that employees get paid for reporting to the work site, or the place where the work is to be conducted at the time that the work is supposed to happen. And if an employee is told two hours in advance that they don't need to do that, then that's a net gain to the employee, as well as the employer. So the purpose of reporting... It's a net gain because they don't have to actually show up at the work site. When you look at the legislative history here, which I think is really the thing that we need to focus on when we're talking about... To get cheaper labor in and not have to pay medical coverage, not have to pay sick leave. I don't think that's borne out by the facts. How much do they pay someone that calls in? They call in. Okay, I'll come in today. What does that person get paid? There are a range of different jobs that could be calling in, and there are a range of wages. It's probably somewhere around $10 an hour. But these are part-time employees. What difference does that make? They're part-time employees. They're typical part-time employees who want to catch a couple of shifts here and there. They want to be able to have the flexibility to say, I'm only going to work for three hours. I do other things with my time. Why not just sign them up? Do you want to work three hours a day? Fine. We'll handle that. We'll pay you for the three hours a day that you work. And you come in every day for three hours, and we'll pay you. I understand the appeal of putting in place a different process for scheduling. But the question at issue here is, what did the Industrial Wage Commission, what did they intend when they put together the rule regarding reporting time per pay? That rule was adopted in 1942. And all of the case law tells us that what we have to do is we have to look at the contemporaneous understanding of the rulemaking agency to determine what they intended to encompass. All these rules were set up in 1942. The IWC first promulgated the reporting time provision in 1942. It amended it in 1968. Who promulgated those rules? The Industrial Wage Commission, which that's actually very important. Industrial Wage Commission of what entity? The Industrial Wage Commission is an entity, a rulemaking agency that was empowered by the California legislature through the labor code. And that is a commission that is supposed to go through the same types of rulemaking procedures that any administrative agency would go through. What was the rule in 1942? The rule in 1942, the intent of the rule in 1942, it was similar to what it is now, but it was raised. What was it? The exact rule in 1942. You know why I'm asking you these questions? Because I got a job in 1942, and I didn't get on the clock. All due respect, in 1942, the wage orders only applied to women and minors. In 1942, the wage orders only applied to women and minors. So, unfortunately, you wouldn't have been covered. That's what I'm saying. It wouldn't have applied to you. But the purpose of the wage orders are to inform employers of what the requirements are that they need to comply with. And throughout the history of the IWC, they have interpreted the term report to mean showing up at the place where the work needs to be done at the time that the work needs to be done. Not entirely. That's not entirely clear. Well, I think it is clear, and I can tell you why. I can do a roundup for you. If we look at the first time it comes up, and it didn't come up in this industry, which is the mercantile industry. The first time it came up, it referred to the problem of allowing workers to come in to the plant when there was little or no work. The come in language implies that somebody is actually going to the plant. Going to the physical place of employment. In 1943, the IWC meeting minutes state that the purpose is to compensate the employee for transportation costs and loss of time. And that is clearly meant to encompass the time that an employee spends getting to the workplace. In 1943, again, when the wage board met to discuss the mercantile industry, they assumed, there's language that indicates that they assumed that report for work entails transportation. In 1947, the same assumption was made. Reporting for work entailed transportation. The only reason transportation would be mentioned there is if there was an assumption that somebody had to go from one place to another place, meaning the workplace. In 1961, there was a statement of the IWC and another industry that described a substantial problem that was to be addressed by this provision of calling employees to the fields for work when there was little work available. Again, they're assuming that the employees are going to the work site. I'm sorry, what did you say? To the fields. It arose in a different industry. The IWC is comprised of agricultural workers. Why don't you say agricultural workers? Sorry, your honor, I wasn't specific enough. In 1966, there was a proposal to expand the reporting time provision that was rejected. At that time, one of the wage boards, there was an area supervisor who decided who stated, and I quote, that the intent of the commission was to ensure that the employee received the minimum amount of pay to reimburse her for the cost of getting to work. That's in the record at, it's at the excerpts of record at 123 to 126. That's critical. In 1966, that was then, I'm sorry, that was in 1967, that was then incorporated into the 1968 wage order. That's the last time that the IWC altered the language of the wage order and expressed any sort of understanding of what it meant by the phrase report for work. Well, I didn't get my fare on the red card reimbursed. So is the statute running? I think it might have. Well, what you had to do, not everyone, but you had to be there like 730 in the morning. And you worked in produce. And you'd just wait until the person who ran that department was getting cut, were getting busy, and then they'd put you on the clock. And then you could put the different vegetable items out there. And so you might have to wait around for an hour, an hour and a half, and then they'd call you in. Then you'd start getting paid. So it was just for their convenience, the employer's convenience, to have enough people there so they'd be ready to go to work right then and there when customers were showing up. Well, I think you hit the nail on the head. That is exactly the situation. Those days you couldn't call anybody on the phone. It cost money to call on the phone. But that's exactly the circumstance that the reporting time provisions were designed to prevent. The same circumstance existed because they wanted to save as much money as they could on labor costs. So who suffered from it? The one who had to get there early and not get paid until they caught him. That's the same thing going on now. But the question is, does the existing provision of the wage order cover the circumstance that we have here? And the answer is, it doesn't. And the fact is, what appellants want to do is they want to enlarge the scope of the current provision to accommodate for a policy reason that's compelling, but that was never vetted. Is Victoria sacred? Is there a union there? I do not believe so. I don't think so. Why shouldn't we send this case to the California Supreme Court? The district court couldn't certify it to the California Supreme Court. Only we can. This case was removed to federal court under the Class Action Fairness Act. So now we're getting all of these cases because you guys are removing everything to the federal courts. And you're asking us to decide these very important state law questions, which are very important to a lot of work. I mean, it's just not Victoria's Secrets, but to mercantile employees throughout the state. So why shouldn't we at least ask the California Supreme Court? And they have taken several of our cases in this area of the law recently. Why shouldn't we at least ask them to consider taking this case and to answer the question that's been posed? Well, my understanding is... Well, because they'll mangle you. Oh, no, they won't. We're right. What? The evidence shows it. Joking aside... That's not the same Supreme Court we had in 1942. Agreed. My understanding of the relevant case law is that there's a presumption against certifying it. Well, there's no presumption in the California Supreme Court certification statute. It's limited to important questions. This, in my view, seems to me like a very important question that affects a lot of people. Well, but this is actually a question of statutory interpretation. This affects thousands of people in this state. Maybe a hundred thousand. Because all these other companies are doing it. Home Depot does it. Costco does it. Many others do it. And it's all on the backs of the working people. This case is not about whether or not it's a good idea to give employees more notice. That's a different case. This case is about whether the circumstances that are pled in plaintiff's complaint fit within the rubric of reporting time pay. And it doesn't take a lot of statutory construction to determine that this is trying to fit a square peg in a round hole. If you have to call, if you have to call, then you're reporting. Well, that's not actually what plaintiffs alleged. What they alleged is that in paragraph 5 of the complaint, they alleged that employees call to learn whether or not they are supposed to work the shift. And in paragraph 46 of the complaint, they say that employees call to determine if he or she needs to report to work for the hours encompassed by the call-in shift. Appellants themselves understood that the purpose of the phone call wasn't to report. They knew they weren't doing any work. The purpose of the phone call was to find out whether they should come in. I'm not sure what his client got paid. Is it correct, though, that if an employee failed to call in, they could be fired? It's alleged in the complaint that they would be disciplined as a matter of actual fact. That's incorrect. They might be talked to, but there's nowhere that it would support that they were going to be terminated if they didn't call in. Could they call in 15 minutes before the start of the shift? They could not call in at all, and they would be talked to, probably. Could they call in 15 minutes before the start of the shift? Sure. And that's okay? No, they would probably be talked to, and they would be asked what happened. They're supposed to call in two hours? Well, it depends. They're supposed to call in at least two hours before the start of the scheduled shift. But there are lots of circumstances where a manager might call them, might tell them ahead of time. In practice, the scheduling policy is sort of administered on a store level, and it could change. There are employees who would be scheduled for the first shift of the day. Those people aren't calling in two hours before that shift. They would know the day ahead of time. Would they call in the day before and say, do I have to report tomorrow at 5 o'clock? A lot of times they could, yeah. Often. Not always, but often. But that's not in the complaint? It's not in the complaint. Okay, thank you. You're over your time. You've got two minutes and 57 seconds. Did you file this in the federal court? Filed in the state court and it was removed. In the state court and they sent you here. That's because you had all this class action business. You were going to make a big deal out of it. I don't blame you for that, but you have a better chance with maybe getting a class action in the state court. Well, unfortunately with the Class Action Fairness Act, that's just not much of an option these days. What'd you say? With the Class Action Fairness Act, that's not much of an option oftentimes these days, as it were. There was one point the opposing counsel raised, and I agree with her completely. The legislative purpose, the purpose of California's reporting time law is very important to the court's where you have former wage chairman explaining that the purpose... Let me back up. All courts, DLSE manuals, any authority agrees there are two purposes to the reporting time law. To encourage proper notice and scheduling practices, and to compensate employees who report for work and are denied the opportunity to earn wages. That raises the question, what's the improper scheduling practice that needed to be remedied? It's employer overscheduling. You can trace that directly back to the comments of former chairman Kidd back in the 1940s. You can look to opinion letters from the attorney general who explained the purpose of the remedy is that when an employee makes herself available to an employer, she is denied the opportunity to earn a living wage unless she is compensated for at least a portion of the time. The purpose of reporting time law is combating overscheduling and compensating employees for the variety of sacrifices they make to report for work when required. Now, the key to their argument is that transportation costs, physical attendance, are the linchpin of the analysis. But the IWC has already expressly rejected this point. In the 1940s, when California's reporting time law was first created, the public housekeeping industry was asked whether resident employees, individuals who by definition incurred no transportation costs, should be entitled to California's reporting time law. Even the employer representative in that situation did not dispute that they are entitled to reporting time pay. They simply asked for a reduced remedy because of the many costs and harms that happen to employees from employer overscheduling. For resident employees, transportation costs are not among them. The commissioner rejected his recommendation and held that California's reporting time law applies equally to employees who incur no transportation costs. Thank you, Your Honor. Thank you, Counsel. We appreciate your argument. I think Earl Warren is Attorney General. Manner submitted. Thank you all. That is our session for today.
judges: Pregerson, Noonan, Paez